**Affirmed as modified; Opinion Filed October 8, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00946-CR

### GLADSTON EDWARD WILSON, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 283rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F15-75416-T**

## MEMORANDUM OPINION

Before Justices Lang, Fillmore, and Schenck
Opinion by Justice Lang

Following a plea of not guilty, appellant Gladston Edward Wilson was convicted by a jury of indecency with a child. Punishment was assessed by the trial court at twelve years' imprisonment. In three issues on appeal, appellant contends (1) the evidence is insufficient to support his conviction, (2) the trial court erred by not holding a hearing on his motion for new trial, and (3) the judgment should be reformed to correctly show the offense for which he was convicted.

We decide against appellant on his first and second issues. Appellant's third issue is decided in his favor. We modify the trial court's judgment to correctly show that the offense for which appellant was convicted is indecency with a child. As so modified, the trial court's judgment is affirmed.

# I. FACTUAL AND PROCEDURAL CONTEXT

The indictment in this case alleged that on approximately May 20, 2009, appellant "intentionally and knowingly cause[d] the penetration of the female sexual organ" of M.W., a child younger than fourteen, by "an object, to-wit: the finger of defendant." At trial, Rolanda Davis testified M.W. is the daughter of her sister, Chasity Washington, and appellant. M.W. was born in 2001. Davis stated she first found out about the sexual abuse in question when M.W. was ten or eleven. M.W. "blurted it out" to Davis while they were watching television. According to Davis, M.W. told her that when she was "younger," appellant "touched her lady part," which Davis understood to be her "vaginal area." Davis testified M.W. told her "it was more than one time" and occurred when M.W. was at home. Davis was "shocked" and started crying. According to Davis, M.W. "wouldn't talk about it" and "kept saying she was okay." Davis tried to get M.W. to tell her mother or maternal grandmother, but M.W. did not want to do so. Davis did not notify Washington or the police because she felt M.W. "wasn't ready" and would "shut down and act like nothing ever happened." Davis testified that approximately two years later, M.W. called her at work, crying and "upset." Davis left work immediately because she was worried about M.W. "maybe harming herself." Shortly thereafter, Davis called Washington and "told her everything [M.W.] had told me in the past."

Washington testified she and appellant have three children together, M.W. and two sons. One of their sons is approximately one year older than M.W. and the other is approximately three years younger than M.W. Washington stated she "split up" with appellant in approximately 2004, but appellant continued to have "off and on" contact with the children "pretty much whenever he wanted." According to Washington, most of appellant's visits with the children took place either at the Oak Cliff home of his mother, Mona Wilson, or "wherever it was he was living at the time."

Further, Washington stated that on some occasions, the children spent nights at Mona Wilson's home while appellant was "in and out and possibly living there."

Washington stated that in approximately 2014, she was out shopping and received a phone call from her father, who was "anxious" and "angry." She immediately returned home and spoke with M.W., who "confirmed" she had been sexually abused and identified appellant as the perpetrator, but would not give Washington "any details or anything." According to Washington, M.W. was upset and "shaken" and "wasn't in a good place," so Washington "didn't want to push her too hard." Washington spoke with M.W. about "the concern about self-harm" because Washington had "noticed some cuts" on M.W. during the twelve months prior to that time. Also, Washington contacted the police. Subsequently, M.W. was forensically interviewed at the Dallas Children's Advocacy Center.

On cross-examination, Washington testified that according to the information she received, the sexual abuse in question started when M.W. was approximately three or four years old, after Washington and appellant had separated. Washington first learned of the abuse when M.W. was thirteen.

Kimberly Skidmore testified she is a forensic interviewer at the Dallas Children's Advocacy Center, which "coordinate[s] investigations when there are allegations of child abuse." She conducted a forensic interview with M.W. on November 19, 2014. During the interview, M.W. made an outcry of sexual abuse, named appellant as the perpetrator, and told Skidmore the abuse started when she was about three years old. According to Skidmore, M.W. stated (1) her mother worked at the airport at that time and so she was dropped off at "her meemaw's house, which she described as her biological dad's mom"; (2) she and her older brother were lying on an air mattress in the living room when her dad came in and lay down next to her on the air mattress as she fell asleep; (3) she "woke up to [appellant's] hand being inside of her pants and underwear, inside of

–3–

her private"; (4) appellant was "moving his hand" and it felt "scratchy" and "uncomfortable"; (5) "nothing had ever went there before except a towel"; (6) she curled her body to move away from him, but he "told her to stop moving away"; and (7) "when he was done, he took his finger out and rubbed the surface of her private area," then "got up." Skidmore asked M.W. if this had happened more than once and M.W. stated that it had. Also, M.W. told Skidmore appellant "had hit her before" and described him as "abusive."

On cross-examination, Skidmore testified M.W. "mentioned" the separation between her mom and dad once during the interview, but Skidmore "didn't go into it" because "it didn't seem to affect [M.W.]." Further, on redirect examination, Skidmore stated (1) disclosures of abuse are "delayed" in most of the cases she sees; (2) the reasons children do not "come forward promptly" include "trust issues" and fear; and (3) M.W. talked about in the interview about "being scared" and "distrusting men."

M.W. testified that when she was approximately three years old, appellant moved out of her family's household. According to M.W., at that time, her mother worked at the airport and M.W. and her brothers spent nights regularly at the home of their paternal grandmother, Wilson. M.W. saw appellant there "from time to time." M.W. stated the first sexual assault by appellant that she can remember occurred at Wilson's home when she was "like three or four." She stated her brothers were lying on an air mattress in the living room and appellant was lying in a recliner chair in that same room. Appellant asked her to join him in the chair and she did so. The recliner chair was fully extended and she was lying with her back toward appellant. M.W. stated she felt appellant's hand move from her thigh "up to my butt" and then "like in a circular motion." At that point, she heard "a zipper" and felt "something . . . sort of like it was a finger but, you know, I honestly don't know, I just know it was warm, go inside of my butt." She stated it was "like skin

to skin" and "in between [her] butt cheeks." She was "panicking," but did not move or make any noise.

M.W. testified that on another occasion she was lying on an air mattress at Wilson's home and appellant was lying next to her. She stated appellant put his hand on her "front" vaginal area, "skin to skin" inside of her clothes and underpants, and made "[a] sliding motion like up and down like." She stated appellant's hand was "inside touching the vaginal lips." Also, M.W. testified appellant abused her in a similar manner other times at Wilson's home and at the home of one of his girlfriends. She thought about telling someone but did not do so until she told her aunt as described above. In approximately sixth grade, she began cutting herself because "it helped me when I was anxious." Further, she testified that when she was in eighth grade, she "would take showers like three times a day" because she "felt so dirty." Eventually, at some point during eighth grade, she called Davis and told her that she "wanted to die."

On cross-examination, M.W. stated in part that appellant's hand "never entered inside [her] vagina." Further, on redirect examination, M.W. testified appellant's hand went "in between" the "outer lips" of her vagina.

Suzanne Anderson testified she is an assistant clinical director at the Dallas Children's Advocacy Center. She stated she has not treated or interviewed M.W. and does not know her. Anderson testified "on a general basis" that (1) "sexual abuse can be a traumatic event for a child" and result in "post traumatic stress"; (2) some victims of sexual abuse are "avoidant" and "don't want to talk about what's happened to them"; and (3) trauma can impact a child's memory and result in "trouble remembering dates." Further, Anderson stated that "delayed outcry" is "very common" in child sexual abuse cases and can be a result of "fear and anxiety over revealing what's happened." On cross-examination, Anderson testified trauma in children can be caused by experiences other than sexual abuse, including divorce or separation of their parents.

Detective Corey Foreman of the Dallas Police Department testified he was assigned to investigate the abuse alleged by M.W. in this case. He stated that after observing M.W.'s 2014 interview with Skidmore described above, it was his opinion that M.W. "was being truthful and provided all the elements of an offense." Further, he stated (1) "there was an issue of exact age" and "that's why in my offense report I did it between the time period," and (2) the date on the indictment, May 20, 2009, "is kind of right in the middle" of the time period in the offense report.

On cross-examination, Foreman stated he spoke with M.W. several weeks after her interview with Skidmore and M.W. told him at that time that "she believes that the first time was actually five years old and not three years old." Foreman stated that did not give him "a concern as to inconsistency" because "throughout the interview, [M.W.] talked about how not being sure of exactly the ages that had occurred." Upon conclusion of Foreman's testimony, the State rested its case.

Wilson testified for the defense. She stated that between 2004 and 2005, her grandchildren visited her home on multiple occasions and sometimes spent the night. However, she testified she does not recall Washington dropping off the children when she worked at the airport. According to Wilson, when the grandchildren would spend the night at her house, (1) the two boys slept on a full-size air mattress on the floor in the living room; (2) she and her husband slept in their bedroom, from which they could see through the doorway into the living room; and (3) M.W. was "supposed to have slept on the sofa" in the living room, but sometimes slept with Wilson and her husband. Further, Wilson stated that during the time period from 2004 to 2006, appellant was not living with her, but "would just like spend the night" at her home "off and on."

On cross-examination, Wilson stated that starting in approximately 2004, appellant "was a private contractor that traveled to do electrical work" and would sometimes stay at her home when

he was not traveling. She stated there were times when appellant and his children all spent the night in her home, but she was not able to recall the dates of those occasions.

Appellant testified that in 2004, he spent the night at his mother's home "a few different times" and the children occasionally spent the night with him there or at his girlfriend's apartment. According to appellant, when he spent the night at his mother's home, he "always slept with my boys in the living room" and M.W. would sleep either in Wilson's room or in his sister's bedroom. Appellant stated he never slept on the same air mattress as M.W., slept in the same room as M.W., tried to fondle her, or put his finger into her vagina. Further, he stated that after his 2004 separation from Washington, M.W. "showed a little resentment toward me because most of the lady friends that I had had kids as well."

America Cardona testified as a rebuttal witness for the State. Cardona stated she works as a mental health counselor at a clinic affiliated with Parkland Hospital. On June 1, 2015, she was assigned to screen M.W., who had "scored high on her risk assessment for suicide" during a visit to the clinic for a physical on that date. Cardona stated that her screening showed M.W. had "severe depression and severe anxiety." Further, Cardona testified that the clinic's medical records pertaining to M.W.'s visit on that date stated in part, "Patient is positive for a history of violent sexual abuse, emotional and physical abuse by her biological father. Earliest memory when she was three years old. Last memory when patient was ten years old. Abuse on and off when father had access."

The charge of the court stated in part,

With respect to the offense of Aggravated Sexual Assault of a Child and Indecency with a Child, the State is not required to prove the exact date alleged. "On or about" means any date prior to the date of the filing of the indictment, which is May 27th, 2015.
Now, bearing in mind the foregoing instructions, if you find and believe from the evidence beyond a reasonable doubt that on or about the 20th day of May, 2009, the defendant . . . intentionally or knowingly caused the penetration of the sexual organ of [M.W.], with the finger of the defendant, and [M.W.] was younger

–7–

than 14 years of age, you will find him guilty of Aggravated Sexual Assault of a Child, as charged in the indictment.

. . . .

If you find and believe from the evidence beyond a reasonable doubt that on or about the 20th day of May, 2009, the defendant . . . intentionally or knowingly engaged in sexual contact with [M.W.], a child younger than 17 years of age, and not then the spouse of the defendant, by contact between the hand of the defendant and the genitals of the complainant, with the intent to arouse or gratify the sexual desire of the defendant, then you will find the defendant guilty of Indecency with a Child, as included in the indictment.

Following appellant's conviction and the assessment of punishment described above, appellant filed a timely motion for new trial. Therein, appellant stated in part that he is entitled to a hearing on his motion for new trial because (1) the matters raised in the motion and accompanying affidavit are not determinable from the record and (2) the motion and affidavit "establish reasonable grounds showing that the defendant could potentially be entitled to relief." Specifically, according to appellant, (1) "[t]rial counsel rendered ineffective assistance by his failure to investigate and present information concerning defendant's physical location at relevant times" and (2) "there is a reasonable probability sufficient to undermine confidence in the outcome of the proceeding that defendant would not have been convicted of any offense had the evidence in question been presented."

Attached to appellant's motion for new trial was an affidavit by him in which he stated in part,

I worked out of town on hotel renovations/remodeling, as an electrician, most of the time when the alleged offense conduct occurred. This was when the complainant was approximately 3-12 years old, or approximately 2005 through 2014. . . .

During the relevant time of approximately nine years, I worked at various times in El Paso, Odessa, Pecos and Midland. I would take the bus from Dallas and stay at hotels. Records could be obtained from the bus trips and from the hotels to show the exact dates of my trips.

Appellant's motion for new trial was denied by the trial court without a hearing. This appeal timely followed.

## II. SUFFICIENCY OF THE EVIDENCE

### *A. Standard of Review*

We review the sufficiency of the evidence to support a conviction by viewing all of the evidence in the light most favorable to the verdict to determine whether any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt. *See Arroyo v. State*, No. PD-0797-17, 2018 WL 4344410, at *2 (Tex. Crim. App. Sept. 12, 2018) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard gives full play to the fact-finder's responsibility to resolve testimonial conflicts, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Further, the fact-finder is the sole judge of the evidence's weight and credibility. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 2005); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray*, 457 S.W.3d at 448. We must presume that the fact-finder resolved any conflicting inferences in the verdict's favor and defer to that resolution. *Id.* at 448–49.

### *B. Applicable Law*

A person commits the offense of indecency with a child by contact if the person engages in sexual contact with a child younger than seventeen years of age. *See* TEX. PENAL CODE ANN. § 21.11(a) (West Supp. 2017). "Sexual contact" is defined as any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child with the intent to arouse or gratify the sexual desire of any person. *Id.* § 21.11(c). The intent to arouse or gratify

may be inferred from conduct alone. *Jimenez v. State*, 507 S.W.3d 438, 440 (Tex. App.—Fort Worth 2016, no pet.). No oral expression of intent or visible evidence of sexual arousal is necessary. *Id*. Further, the complainant's testimony alone is sufficient to support a conviction for indecency with a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2017); *Bazanes v. State*, 310 S.W.3d 32, 40 (Tex. App.—Fort Worth 2010, pet. ref'd).

### *C. Application of Law to Facts*

In his first issue, appellant contends the evidence was insufficient to support his conviction for indecency with a child. According to appellant, "a mere modicum of evidence cannot meet constitutional muster to support a guilty finding beyond a reasonable doubt." (citing *Jackson*, 443 U.S. at 323–24). Specifically, appellant argues,

> [T]his Court should consider the 10-year delay in the outcry; the improbable notion that the 16-year-old complainant could accurately recall events that transpired when she was three or four years old; the several-month delay, following the forensic interview, which was apparently necessary for clarification about complainant's age at the time of the alleged abuse; the absence of any evidence independent of complainant's claims, such as any suggestion that Appellant had other victims; complainant's apparent perception that she was abandoned by Appellant, with Appellant instead giving attention to his girlfriends' children; and the jury's determination that the claim of penetration as alleged was not credible, which suggested general concern about complainant's credibility. Applying the modicum of proof requirement to the unique considerations in Appellant's case, this Court should conclude that the evidence was insufficient to support the indecency with a child conviction.
>
> The testimony that complainant divulged the alleged abuse to her aunt did not elevate the degree of proof over a modicum, since complainant's aunt's failure to report the alleged abuse meant that she facilitated commission of the alleged indecency offense, and she was thus an uncorroborated accomplice witness. Even if not an accomplice, complainant's aunt's testimony could not support the conviction, because, if she believed the information conveyed to her by complainant in 2012 or 2013, she would have promptly reported it to the authorities.

(citations to record and authority omitted).

The State responds that the jury "was free to disbelieve Appellant's characterization of the evidence" and "[i]f the jury discredited Appellant's version of events, then it was left only with

the statements of M.W., which sufficiently met the elements required to support a conviction for indecency with a child."

The record shows M.W. testified that during a time period starting when she was approximately three or four years old, appellant, while lying next to her, (1) touched her "in between [her] butt cheeks" with "something . . . sort of like it was a finger" and (2) touched her with his hand "in between" the "outer lips" of her vagina and made "[a] sliding motion like up and down like." As described above, the fact-finder is the sole judge of the evidence's weight and credibility and we must presume the fact-finder resolved any conflicting inferences in the verdict's favor and defer to that resolution. *See Murray*, 457 S.W.3d at 448–49; *Dobbs*, 434 S.W.3d at 170. On this record, we conclude the evidence is sufficient to support appellant's conviction for indecency with a child. *See* TEX. PENAL CODE ANN. § 21.11; TEX. CODE CRIM. PROC. ANN. art. 38.07; *see also Jimenez*, 507 S.W.3d at 440 (intent to arouse or gratify may be inferred from conduct alone).

We decide against appellant on his first issue.

### III. HEARING ON MOTION FOR NEW TRIAL

#### A. Standard of Review and Applicable Law

Appellate courts review a trial court's denial of a request for a hearing on a motion for new trial under an abuse-of-discretion standard. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). Under that standard, we reverse only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id*. A trial court abuses its discretion in failing to hold a hearing on a motion for new trial if the motion (1) raises matters that are not determinable from the record and (2) establishes reasonable grounds showing that the defendant could potentially be entitled to relief. *Id*. at 338–39. Further, when, as here, a motion for new trial relies on a claim of ineffective assistance of counsel, the defendant must allege sufficient

–11–

facts from which a trial court could reasonably conclude both that counsel failed to act as a reasonably competent attorney and that, but for counsel's failure, there is a reasonable likelihood that the outcome of his trial would have been different. *Id*. at 341.

### B. Application of Law to Facts

In his second issue, appellant contends the trial court erred by refusing to hold a hearing on his motion for new trial. According to appellant, his motion for new trial "raised reasonable grounds for relief that could not be determined from the existing record" because it showed "[t]he jury did not hear the evidence that would firmly establish Appellant's travel schedule as generally preventing him from spending the night with his children." Appellant asserts a hearing was necessary for him to introduce that "underlying information" and to "establish that there was no strategic basis for trial counsel failing to investigate and/or otherwise foregoing the opportunity to best establish that Appellant was insufficiently available in Dallas to commit the alleged conduct." The State responds that the trial court did not abuse its discretion by not holding a hearing on appellant's motion for new trial because "the motion failed to address issues that could not have been determined from the record."

The record shows (1) appellant testified at trial that in 2004, he spent the night at his mother's home "a few different times" and the children occasionally spent the night with him there or at his girlfriend's apartment, and (2) Wilson testified that during the time period from 2004 to 2006, appellant was not living with her, but "would just like spend the night" at her home "off and on" when he was not traveling. Further, appellant stated in his affidavit attached to his motion for new trial (1) he "worked out of town on hotel renovations/remodeling, as an electrician, most of the time when the alleged offense conduct occurred"; (2) "[t]his was when the complainant was approximately 3-12 years old, or approximately 2005 through 2014"; and (3) "[d]uring the relevant time of approximately nine years, I worked at various times in El Paso, Odessa, Pecos and

Midland" and "would take the bus from Dallas and stay at hotels." Appellant's assertion that he was outside of Dallas for "most of" the time period in question is not inconsistent with the testimony at trial, nor does it preclude appellant from having access to M.W. in Dallas during the remaining portion of that time period.

On this record, we conclude appellant's motion for new trial did not raise a matter not determinable from the record, establish reasonable grounds showing appellant could potentially be entitled to relief, or allege sufficient facts from which a trial court could reasonably conclude that, but for counsel's alleged incompetence, there is a reasonable likelihood the outcome of the trial would have been different. *See Smith*, 286 S.W.3d at 338–41. Accordingly, we conclude the trial court did not abuse its discretion by not holding a hearing on appellant's motion for new trial. See id.

Appellant's second issue is decided against him.

### IV. MODIFICATION OF JUDGMENT

#### A. Standard of Review and Applicable Law

This Court "has the power to correct and reform the judgment of the court below to make the record speak the truth when it has the necessary data and information to do so." *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd); *accord Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Abron v. State*, 997 S.W.2d 281, 282 (Tex. App.—Dallas 1998, pet. ref'd); *see also* TEX. R. APP. P. 43.2(b) (court of appeals may "modify the trial court's judgment and affirm it as modified").

#### B. Application of Law to Facts

In his third issue, appellant contends the trial court's judgment "should be reformed to correctly show the offense of conviction and penal code section." Specifically, appellant asserts that although the record shows the jury convicted appellant for indecency with a child, which is

described in penal code section 21.11, the trial court's judgment states (1) appellant was convicted for "AGGRAVATED SEXUAL ASSAULT CHILD" and (2) the statute for the offense for which appellant was convicted is "22.021(a)(2)(B) Penal Code." *See* TEX. PENAL CODE ANN. §§ 21.11, 22.021. The State agrees that the trial court's judgment should be modified as requested by appellant.

The record unambiguously shows the jury convicted appellant of indecency with a child. Thus, the applicable statute is penal code section 21.11. *See* TEX. PENAL CODE ANN. § 21.11. We decide appellant's third issue in his favor. Accordingly, we modify the trial court's judgment to state the proper offense and statute as described by appellant.

## V. CONCLUSION

We decide against appellant on his first and second issues. Appellant's third issue is decided in his favor. We modify the trial court's judgment to state that the offense for which appellant was convicted is "INDECENCY WITH A CHILD," rather than "AGGRAVATED SEXUAL ASSAULT CHILD," and the "Statute for Offense" is "21.11 Penal Code," rather than "22.021(a)(2)(B) Penal Code." As so modified, the trial court's judgment is affirmed.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
170946F.U05

−14−



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

GLADSTON EDWARD WILSON,
Appellant

No. 05-17-00946-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 283rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F15-75416-T.
Opinion delivered by Justice Lang, Justices
Fillmore and Schenck participating.

Based on the Court's opinion of this date, we **MODIFY** the judgment of the trial court to state that the offense for which appellant Gladston Edward Wilson was convicted is "INDECENCY WITH A CHILD," rather than "AGGRAVATED SEXUAL ASSAULT CHILD," and the "Statute for Offense" is "21.11 Penal Code," rather than "22.021(a)(2)(B) Penal Code."

As so **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 8th day of October, 2018.