

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-15-00303-CR**

JOSE L. JIMENEZ                                                            APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

----------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1327144D

----------

## OPINION

----------

### I. INTRODUCTION

A jury found Appellant Jose L. Jimenez guilty of the offense of indecency with a child by contact, and the trial court sentenced him to eight years' imprisonment. Appellant raises six issues—two issues challenging the sufficiency of the evidence and four issues challenging the admission of

testimony from four witnesses for impeachment purposes. For the reasons set forth below, we will affirm the trial court's judgment.

## II. FACTUAL OVERVIEW[1]

Appellant is the father of Timmy,[2] who was five years old at the time of the offense. Appellant had been away from home for several days. He came home late on the evening of April 18, 2013, and he was intoxicated. His wife, Timmy's mother Ann,[3] was angry with him for the time he had spent away from home and suspected he had been with his paramour. She readied Timmy for bed by putting on his pajamas. She refused to sleep in the couple's bed with Appellant, so she went to sleep on the couch.

The next morning, Ann went to wake Timmy for school. Timmy was in the couple's bed with Appellant. When Ann pulled back the covers, she saw that Appellant was fully clothed and that Timmy did not have on his pajama bottoms. Timmy told Ann that Appellant had touched him on his "wee-wee."

Ann called the police a few days later to report the incident. The police responded, and Ann made statements to them. Timmy was examined by a

---

[1]We provide a more detailed recitation of the facts in connection with the analysis of Appellant's issues.

[2]To protect the victim's identity, we refer to him by a pseudonym. *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

[3]Ann does not speak English; she testified at trial through a translator.

sexual assault nurse examiner (SANE) and made statements to her and to a forensic investigator.

## III. SUFFICIENCY OF THE EVIDENCE

Appellant's first two issues challenge the legal and factual sufficiency of the evidence to support his conviction, respectively.

### A. Standard of Review

The dual concepts of "factual insufficiency" and "legal insufficiency" are now a single "sufficiency" standard, as was articulated by the United States Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781 (1979). *See Brooks v. State*, 323 S.W.3d 893, 894–912 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126, 134–36 (Tex. Crim. App. 1996)). The *Jackson* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) (referencing *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789), *cert. denied*, 132 S. Ct. 1763 (2012). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. 443 U.S. at 319, 99 S. Ct. at 2789; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

3

## B. Elements of the Offense

A person commits the offense of indecency with a child by contact if, with a child younger than seventeen years and not the person's spouse, the person engages in sexual contact with the child. Tex. Penal Code Ann. § 21.11(a)(1) (West 2011). "Sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person: any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child. *Id.* § 21.11(c)(1). A person acts intentionally with respect to the nature of the conduct or a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a) (West 2011). In the context of indecency with a child, the factfinder can infer the requisite intent to arouse or gratify the sexual desire from conduct, remarks, or all the surrounding circumstances. *See McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981). The intent to arouse or gratify may be inferred from conduct alone. *Id.* No oral expression of intent or visible evidence of sexual arousal is necessary. *Gregory v. State*, 56 S.W.3d 164, 171 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd), *cert. denied*, 538 U.S. 978 (2003). Moreover, because voluntary intoxication is not a defense to the commission of a crime, evidence of a defendant's voluntary intoxication does not negate the *mens rea* elements of intent or knowledge. *See* Tex. Penal Code Ann. § 8.04(a) (West 2011); *Hawkins v. State*, 605 S.W.2d 586, 589 (Tex. Crim. App. [Panel Op.] 1980).

4

## C. The Evidence

### 1. Ann's Testimony

At trial, Ann testified that Timmy usually slept in bed with the couple, that she had heard Timmy and Appellant playing and laughing in the bedroom that night, and that Timmy had told her that Appellant had taken off his pajamas to play "tickles" and had accidently brushed against him. Ann steadfastly testified that Timmy had never said that Appellant had touched his private parts because "those were not his words." Ann admitted that she had called the police and had reported the incident; Ann said that she had told the police that Appellant and Timmy were just playing but that the police would not listen to her.

### 2. Timmy's Testimony

At trial, Timmy testified that he had lied when he said Appellant had touched him because he did not know what was touching him, just that it was very cold. Timmy admitted that he had told his mother that Appellant had touched him but said, "I don't know if it was him." When the prosecutor asked whether he thought someone else was touching him, he said, "[M]aybe." When the prosecutor asked, "[On] what part of your body did you think that someone touched you?" Timmy answered, "[M]y wee-wee," which he said he uses to pee. Timmy testified that he did not remember talking to a lady in a room with a camera. Timmy also testified that he had taken his pajamas off himself because he was hot. Timmy further testified that he had lied to his mother about what had

5

happened and that no one had asked him to change his story; he did it on his own.

### 3. Appellant's Testimony and Videotaped Statement

The video of Appellant's statement to Fort Worth Police Sergeant Patrick Delano was played for the jury. On the video, Appellant says that if Timmy said Appellant touched his private parts, then he touched them.

Appellant testified at trial and was asked, "So what happened that morning? What's the first thing you remember when you woke up?" And he answered:

> Just like she said, she walked in, and I was still asleep and she wakes him up. I remember she pull[ed] up the covers and, you know, I feel pretty much everything because I'm sensitive of everything that's going on. And she said, "Why are you naked?" And his first words he said, "My dad took my clothes off." And she says -- and then she asked him why, and he did say that because he was playing with me, and I remember that, you know, he did mention that I touched him on his wee-wee, and I'm like, what? But then, you know, that's the opportunity that she took to make it into, like, something that it wasn't, and now gives it to the State and tells the State about this, and now we're here.

Appellant denied that he had touched Timmy "improperly."

Appellant admitted both on the video and at trial that he was intoxicated that night and does not remember what happened. Appellant also admitted that when Ann confronted him about what had happened that night, he told her that he was drunk and could have thought that it was her in the bed with him. He testified, "I told her that I am sorry if I touched him."

6

#### 4. Testimony of Nurse Brenda Crawford

Brenda Crawford is a registered nurse; she is certified as a SANE and works at Cook Children's Medical Center. She performed a sexual assault examination on Timmy on May 1, 2013. Because Ann speaks only Spanish and because Nurse Crawford is fluent in Spanish, she was assigned to Timmy's case. Ann told Nurse Crawford that her husband had come home drunk, had gone to their bedroom to sleep, and had taken Timmy with him into the bedroom; that she could hear Timmy telling his father to leave him alone because he wanted to sleep; and that when she went to wake up Timmy for school, he was not wearing any clothes. Ann asked Timmy why his clothes were off, and he said that his daddy took off his clothes and touched his "bebitos." Nurse Crawford explained that she writes down verbatim what she is told, using that person's words. Nurse Crawford testified that Timmy told her, "My dad touched me at night[,] and he was drunk. He took my PJ pants and undies off and touched me here" and pointed to his genital area. Nurse Crawford said those were Timmy's words. Nurse Crawford testified that neither Timmy nor Ann mentioned anything to her about tickling, wrestling, playing, or an accidental touching.

#### 5. Testimony of Fort Worth Police Sergeant Patrick Delano

Patrick Delano testified that he is a sergeant with the City of Fort Worth Police Department. In May 2013, he worked in the crimes against children unit and was assigned to investigate an indecency case against Appellant. Sergeant Delano testified that Ann told him that around 6:50 a.m. when she went to wake

up Timmy for school, she pulled the covers back on the bed and saw that his underwear and his pajama bottoms were down at the foot of the bed but that he still had his pajama top on. When she asked Timmy why his pajamas were off, he said that his dad had taken them off and had touched him on his privates. Sergeant Delano said that Ann never told him she thought the offense did not happen or that it was an accident. Sergeant Delano then met with Appellant and interviewed him; the interview was recorded and admitted into evidence as State's Exhibit 3.

### 6. Testimony of Child Protective Services (CPS) Investigator Vincent Appolonio

Vincent Appolonio of CPS was assigned to investigate an allegation concerning Timmy and Appellant. Appolonio said that when he spoke with Ann, she was concerned about her family being broken up; she said that she had confronted Appellant about what had happened and that he had apologized and had said that he thought it was her in the bed. Appolonio interviewed Timmy at his elementary school. After obtaining general information from Timmy, Appolonio began asking general sexual screening questions. Timmy made a statement to Appolonio reflecting sexual abuse, so Appolonio stopped his interview and referred Timmy for a forensic interview.

### 7. Testimony of Forensic Interviewer Charity Henry

Charity Henry testified that she is employed with Alliance for Children as a forensic interviewer and that in that capacity, she interviews children to find out

what, if anything, happened regarding allegations of violent crimes and abuse, mainly sexual abuse. Henry conducted two interviews of Timmy. During the first interview, Timmy was able to provide sensory and peripheral details concerning what had happened. Henry conducted a second interview of Timmy eight months after the first interview because she had been informed that he had recanted. Henry said that Timmy was more hesitant in the second interview but said that he did not recant.

### D. The Law on Outcry Statements and Recantations

A child victim's outcry statement alone can be sufficient to sustain a conviction for a sexual offense. *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991); *Saldaña v. State*, 287 S.W.3d 43, 60 (Tex. App.—Corpus Christi 2008, pet ref'd); *Kimberlin v. State*, 877 S.W.2d 828, 831 (Tex. App.—Fort Worth 1994, pet. ref'd). And when such statements are recanted by the victim and the outcry witness, the jury as the sole judge of the credibility of the witnesses is entitled to determine whether to believe the prior statements or the recantations. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *Saldaña*, 287 S.W.3d at 60 ("Furthermore, when a witness recants prior testimony, it is up to the fact finder to determine whether to believe the original statement or the recantation. A fact finder is fully entitled to disbelieve a witness's recantation."); *Jackson v. State*, 110 S.W.3d 626, 631 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) ("[A] criminal conviction, which requires proof beyond a reasonable doubt, may rest on hearsay despite the lack of the

9

complainant's testimony or even the complainant's recantation."). That is, a complainant's recantation of an earlier outcry statement does not destroy the probative value of the statement. *Chambers*, 805 S.W.2d at 461.

### E. Sufficiency Analysis

Both Timmy and Appellant testified that when Ann pulled back the covers and asked Timmy why his pajama bottoms were off, Timmy said that Appellant had touched his "wee-wee." The State argued in opening statement and in closing arguments that this initial statement by Timmy was truthful; that then-five-year-old Timmy's statement to his mother the morning when she pulled back the covers was credible because when he made the statement, he was just answering her question without thought of any consequences.[4] Additionally, Appellant did not deny touching Timmy's genitals but insisted that any touching

---

[4]The prosecutor argued:

Times in this job you come to realize that the English language has cliches for a reason, and one that has stuck out to me is one that I think gives a snapshot of what this case is about is, in whole, from the mouth of babes comment. It is the whole idea that children, when they are not so cynical from years of maturing, often say the darnedest things, and they often say things without thought about -- without worry about the consequences because it's just the truth. It's just what happened, and in this case back in April 2013, five-year-old [Timmy] Jimenez was a babe. And when his mother asked him, based upon the stuff she had seen, "Hey, did daddy touch you?" The babe, without the thought of anything other than this is what I was asked, says yes. He says that this defendant touched his, in his words, a five-year-old's mind's words, his wee-wee, his genitals.

10

was accidental and was not done "improperly."[5] Appellant also testified that he was intoxicated that night and does not remember much of what happened; he testified that he had told Ann that maybe he had hugged Timmy thinking it was her in bed with him.[6] And Timmy's "recantation" was equivocal; he did not change his testimony that someone or something had touched his "wee-wee" but testified he did not know that it was Appellant who had touched him. *See Chambers*, 805 S.W.2d at 461 (explaining that based on victim's equivocating statements, "it [was] questionable whether this was a true repudiation . . . or merely a conflict in testimony. The jury observed the complainant's demeanor

---

[5]Appellant's attorney asked him: "So you absolutely deny you touched him in any way, shape, or form improperly?" And Appellant answered, "Improperly, yes."

[6]Appellant testified:

Q. What about the statement [Ann] told somebody that maybe you hugged her -- hugged him and thought it was her?

A. Well, because she like -- got like, what the hell is going on, and I'm like, excuse me for my -- and I'm like, well, if -- if he said that, I touched him, all right. The only thing I can think of is, you know, maybe I was hugging you and thinking that it was you, all right. But is that something that's maliciously -- I mean, you know what I'm saying.

Q. Uh-huh.

A. Not on purpose.

Q. But then, again, is hugging somebody different than touching their private areas?

A. Well, it's up to them to decide.

and was entitled not only to reconcile any such conflicts, but even to disbelieve her recantation"). Accordingly, viewing all of the evidence—including Nurse Crawford's, Sergeant Delano's, Appolonio's, and Henry's testimony—and the reasonable inferences from it and deferring to the jury's weight and credibility of the evidence determinations, we hold that a rational trier of fact could have found beyond a reasonable doubt that the essential elements of the offense of indecency with a child (Timmy) by contact were committed by Appellant. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Isassi*, 330 S.W.3d at 638; *see also* Tex. Penal Code Ann. §§ 8.04(a), 21.11(a)(1). We overrule Appellant's first and second issues.

## IV. COMPLAINTS CONCERNING IMPEACHMENT TESTIMONY WERE FORFEITED

In issues three through six, Appellant asserts that the trial court erred by permitting Nurse Crawford, Sergeant Delano, Appolonio, and Henry to testify to prior statements made by Ann for the purpose of impeaching Ann's trial testimony. Specifically, Appellant argues that the State's primary purpose for eliciting the testimony from these witnesses concerning Ann's statements to them "was to place before the jury otherwise inadmissible hearsay evidence. [*See*] *Hughes v. State*, 4 S.W.3d 1 (Tex. Crim. App. 1999)." The State asserts that these complaints were forfeited because Appellant did not assert these complaints in objections at trial.

The Texas Court of Criminal Appeals has held that a hearsay objection to prior-inconsistent-statement impeachment testimony did not comport with a

12

complaint like Appellant's here—that the State's actual purpose in impeaching Ann was to gain admission of her prior statements. *See Barley v. State*, 906 S.W.2d 27, 36–37 & n.11 (Tex. Crim. App. 1995) (holding appellate complaint— that "the written statement of Jimmy Fuller, who was called as a witness by the prosecution and then impeached, ostensibly by his prior inconsistent statements, when in fact, said impeachment was employed as a mere subterfuge to get otherwise inadmissible hearsay evidence before the jury"—was not preserved by hearsay objection), *cert. denied*, 516 U.S. 1176 (1996). Appellant asserted either no objection, hearsay objections, or confrontation clause objections to the complained-of testimony by Nurse Crawford, Sergeant Delano, Appolonio, and Henry. These objections do not raise the complaint Appellant asserts on appeal—that the prior inconsistent statements of Ann were inadmissible as impeachment evidence under rule 607 because the State's actual purpose in offering the statements was to place otherwise inadmissible testimony before the jury, which made the statements more prejudicial than probative under rule 403. *See Hughes*, 4 S.W.3d at 5. Because Appellant's complaints regarding the impeachment testimony were not raised in the trial court, the trial court did not have the opportunity to rule on them, and they are forfeited on appeal. *See Barley*, 906 S.W.2d at 37 & n.11 (holding rule 403 objection to prior-inconsistent-statement evidence—which was purportedly offered by State for impeachment under rule 607 but was actually offered to gain admission of otherwise inadmissible testimony—was not made in trial court, so complaint was forfeited

13

on appeal); *see also* Tex. R. App. P. 33.1(a)(1).  Accordingly, we overrule Appellant's third through sixth issues.

## V. CONCLUSION

Having overruled each of Appellant's six issues, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER, J.; and CHARLES BLEIL (Senior Justice, Retired, Sitting by Assignment).

BLEIL, J., filed a dissenting opinion.

PUBLISH

DELIVERED:  December 22, 2016

14