

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00090-CR

———————————————

DAVID LYNN BOYD, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 271st District Court
Wise County, Texas
Trial Court No. CR19870

Before Birdwell, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

David Lynn Boyd appeals his conviction for aggravated sexual assault. First, Boyd contends that the evidence is insufficient to show that he knowingly committed the offense, citing his own statements that the penetration was accidental. We hold that the circumstances of Boyd's offense, including his improbable and inconsistent accounts, justified an inference of knowledge.

Second, Boyd maintains that a deficiency in the jury charge's definition of the term "knowingly" requires reversal. But Boyd did not object to the error, and the record does not reveal the sort of egregious harm that is required in order to obtain reversal for unpreserved charge error.

We therefore affirm.

## I.   BACKGROUND

On the night of April 21, 2017, the nine-year-old complainant J.F. was sleeping on a loveseat in her grandmother's duplex. J.F.'s mother A.B. was asleep with her husband on an air mattress nearby. Boyd, who had spent the night with the family drinking vodka, was staying next door in the other half of the duplex.

Around 2:00 A.M., A.B. went to the bathroom, and J.F. ran to go with her. J.F. told her mother that it hurt to pee. A.B. twice asked what was wrong, but J.F. did not want to say. After A.B. asked a third time, J.F. said that Boyd had touched her.

A.B. took J.F. to the emergency room, and hospital employees alerted the police. By 7:30 A.M., J.F. was being evaluated by a sexual assault nurse examiner or SANE.

2

J.F. told the SANE that while she was sleeping, Boyd had come in and touched her private part beneath her underwear. When the SANE asked J.F. to show her how it had occurred, J.F. demonstrated one finger penetrating her vagina past the hymen. J.F. complained of discomfort, and her physical exam revealed extensive redness, which the SANE viewed as a possible sign of trauma, injury, and fondling. Ultimately, the SANE believed the examination was consistent with J.F.'s version of events.

In the weeks that followed, Boyd adamantly denied to the family that he had done anything to J.F. And at first, he continued to deny wrongdoing during his May 22 interview with federal agent Brian Luley, who was helping the Wise County Sheriff's Office investigate Boyd's case.

However, within an hour, Boyd admitted to Agent Luley that he touched J.F. under her panties and put his finger into her vagina. Agent Luley asked him to draw a diagram indicating the depth of penetration. Boyd complied, drawing a picture that indicated the very tip of his index finger. Agent Luley asked him why he had stopped. Boyd replied that he knew it was wrong.

Boyd maintained, though, that violating J.F. was an accident. He told police that he was simply looking for his phone charger in the dark, believing it could have been lodged in the cushions of the loveseat where he was sitting earlier that night, and when he attempted to lift J.F. so that he could look through the cushions, he accidentally penetrated her vagina. Boyd gave a written statement to authorities:

> I was looking for my phone charger and when I lifted [J.F.] up with my left hand my [i]ndex finger slipped into her panties and when I realized that my finger touched her vagina I stepped away and [A.B.'s husband] told me to just pick her up. I said no and walked back next door. I realized my finger went past her panties and touched her vagina when I felt her skin.

In the weeks that followed, Boyd apologized to A.B. but claimed that his contact with J.F. was an accident.

Boyd was indicted for aggravated sexual assault of a child younger than fourteen years of age for causing the penetration of J.F.'s sexual organ with his finger. At trial, Boyd again admitted that he had penetrated J.F., but he continued to insist that it was accidental contact as he fumbled for his phone charger. J.F. also testified that Boyd had touched her some place she did not like, though she could not say whether it was inside or outside.

After hearing the evidence, the jury found Boyd guilty and assessed punishment at 35 years' confinement. The trial court rendered judgment accordingly. Boyd appeals.

## II. SUFFICIENCY OF THE EVIDENCE

In his first issue, Boyd challenges the sufficiency of the evidence to support the culpable mental state element of his conviction for aggravated sexual assault of a child. He relies on his own trial testimony that the contact with J.F. was accidental and unintentional, as well as testimony from other witnesses who relayed similar statements that Boyd made prior to trial. Boyd contends that in light of this testimony, the totality of the evidence is insufficient to show a knowing assault.

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Queeman*, 520 S.W.3d at 622. We determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Murray*, 457 S.W.3d at 448–49.

To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by the hypothetically correct jury charge to the evidence adduced at trial. *See Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). Such a charge is one that accurately sets

5

out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

Aggravated sexual assault is a nature-of-conduct offense through "which the legislature criminalized very specific conduct of several different types." *See Young v. State*, 341 S.W.3d 417, 423 & n.20 (Tex. Crim. App. 2011) (quoting *Vick v. State*, 991 S.W.2d 830, 832 (Tex. Crim. App. 1999)). One of those types of conduct occurs where a person intentionally or knowingly causes the penetration of a child's sexual organ by any means and the victim is younger than fourteen years of age. Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (a)(2)(B). A hypothetically correct jury charge would have instructed the jury that a person acts knowingly with respect to the nature of his conduct when he is aware of the nature of his conduct.[1] *Id.* § 6.03(b); *Ramirez-Memije v. State*, 444 S.W.3d 624, 625 n.3 (Tex. Crim. App. 2014).

Because the accused's mental state is usually "concealed within his own mind," *Smith v. State*, 965 S.W.2d 509, 518 (Tex. Crim. App. 1998), intent and knowledge are most often proven through circumstantial evidence surrounding the crime. *Olmos v.*

---

[1] The common law rule that in order to constitute a crime, the act must be accompanied by a criminal mind, has been a bedrock principle in American criminal law dating back to the founding. *Cook v. State*, 884 S.W.2d 485, 487 (Tex. Crim. App. 1994). The notion that "[c]rime, as a compound concept, generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand, was congenial to an intense individualism and took deep and early root in American soil." *Id.* (quoting *Morissette v. United States*, 342 U.S. 246, 251, 72 S. Ct. 240, 244 (1952)).

6

*State*, No. 02-14-00280-CR, 2015 WL 5770622, at \*4 (Tex. App.—Fort Worth Oct. 1, 2015, no pet.) (mem. op., not designated for publication). A jury may infer knowledge or intent from any facts which tend to prove their existence, including the acts, words, and conduct of the accused; the method of committing the crime; and the nature of the wounds inflicted. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002). "Because one's acts are generally reliable circumstantial evidence of one's intent, the jury could reasonably infer that [the defendant] intended to do exactly what he did . . . ." *Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009) (cleaned up).

Here, Boyd confessed before the jury exactly what he did: penetrate J.F.'s vagina with his index finger. This is at least some circumstantial evidence that Boyd knew he was penetrating J.F.'s vagina with his index finger. *See id.*

Boyd professed that the contact was accidental. However, he came to that explanation after weeks of denying that any contact occurred in the first place. "Attempts to conceal incriminating evidence, inconsistent statements, and implausible explanations are . . . probative of wrongful conduct and are circumstances of guilt," *Lozano v. State*, 359 S.W.3d 790, 814 (Tex. App.—Fort Worth 2012, pet. ref'd), and for this offense, knowledge is no less a part of guilt than any other element. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B).

Moreover, even after belatedly admitting the contact itself, he was unable to offer a consistent version of events when it came to his mental state. In his written statement to authorities, he explained that he realized on the night of the assault that something

7

had gone wrong as he picked J.F. up; Boyd wrote that as soon as he felt her skin, his mistake dawned on him, and he dropped her. But by the time he reached the witness stand, his account had changed, and it continued to change throughout his testimony. He initially testified on direct examination that he did not realize until the morning after the incident that he had touched her inappropriately. Later on direct, he instead testified that it was during the second half of his interview with Agent Luley, weeks after the abuse, when he had realized what happened. Still later on direct, Boyd returned to the version of events that he gave in his statement to police: that he had recognized his error as soon as he "felt skin," prompting him to drop J.F. and pull back. On cross-examination, Boyd reverted to his explanation that he had "realized what had happened" while speaking with Agent Luley weeks after the incident. The jury could have rationally concluded that Boyd's inability to straighten the kinks in his own story concerning his mental state was evidence that he possessed a culpable mental state.

The jury might have also fairly believed that some aspects of Boyd's testimony were "implausible explanations" in themselves, such as Boyd's claim that being interrogated by a federal agent sparked in him a realization, weeks after the offense, that he had touched J.F. *See Lozano*, 359 S.W.3d at 814. A justified inference would have been that the interview did not bring about genuine self-discovery, but a calculated attempt to deflect responsibility as he felt the heat of stationhouse interrogation. *See Pecina v. State*, 361 S.W.3d 68, 75 (Tex. Crim. App. 2012) (recognizing the inherently coercive effects of police interrogation).

8

More generally, the claim that the touching was accidental might have also seemed highly improbable to the jury in light of J.F.'s sleeping arrangements. On the night in question, J.F. was wearing a long T-shirt, underwear, and shorts under two blankets. With multiple overlapping barriers between Boyd and J.F.'s genitalia, it would have been fair to question whether negotiating so many layers could have been accomplished through anything other than an intentional or knowing act. *See Bazanes v. State*, 310 S.W.3d 32, 35 (Tex. App.—Fort Worth 2010, pet. ref'd) ("Bazanes could not explain how he had accidentally touched E.C.B. under her clothing.").

Finally, there are the method of committing the offense and the nature of the wounds inflicted. *See Hart*, 89 S.W.3d at 64. In the hours after the offense, J.F. reported pain and discomfort, and the SANE observed genital redness that in her view indicated trauma and possible injury. J.F. informed the SANE that the penetration went past her hymen. The jury could have rationally concluded that the extent of the incursion, pain, markings, and injury exceeded what could be expected from the accidental contact with a fingertip that Boyd described, and that it instead betrayed a more substantial and deliberate intrusion. *See, e.g.*, *Flores v. State*, No. 11-16-00296-CR, 2018 WL 576169, at *3 (Tex. App.—Eastland Jan. 25, 2018, pet. ref'd) (mem. op., not designated for publication); *Adams v. State*, 502 S.W.3d 238, 242 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

We were presented with a similar set of circumstances in *Jimenez v. State*, 507 S.W.3d 438, 443–44 (Tex. App.—Fort Worth 2016, no pet.). There, as here, a man was alleged to have inappropriately touched a young child in the child's bed after a night of drinking. *Id.* at 443. As here, the man did not deny touching the child's genitals, and he apologized for his actions, but he insisted that any contact was accidental. *Id.* at 442–43. And as here, the complainant's trial testimony was equivocal as to whether the offense unfolded as alleged in the indictment, but the SANE related an account that the child gave shortly after the incident, which indicated that inappropriate sexual contact had occurred as alleged. *Id.* at 441–43. We found the circumstantial evidence, including the evidence that the appellant had removed the victim's clothes, sufficient to show the mental state element. *Id.* at 444; *see Elliott v. State*, No. 02-10-00322-CR, 2011 WL 1435208, at *3–4 (Tex. App.—Fort Worth Apr. 14, 2011, no pet.) (per curiam) (mem. op., not designated for publication) (relying on circumstantial evidence to uphold a sexual assault conviction despite appellant's claim that the contact was accidental).

We reach the same conclusion here. Viewing the record in the light most favorable to the verdict, we hold that the cumulative force of the evidence would have justified any reasonable jury in finding the element of knowledge beyond a reasonable doubt. *See Queeman*, 520 S.W.3d at 622; *Murray*, 457 S.W.3d at 448. The evidence is sufficient to sustain Boyd's conviction for aggravated sexual assault. We overrule Boyd's first issue.

10

### III.   JURY CHARGE ERROR

Section 6.03 of the penal code defines "knowingly" in light of "two possible conduct elements—nature of the conduct and result of the conduct." *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015). Aggravated sexual assault is a nature-of-conduct offense. *Young*, 341 S.W.3d at 423 & n.20. "In a jury charge, the language in regard to the culpable mental state must be tailored to the conduct elements of the offense." *Price*, 457 S.W.3d at 441. Thus, the jury charge in this case should have defined knowledge in terms of the nature of the conduct: a person acts knowingly, or with knowledge, with respect to the nature of his conduct when he is aware of the nature of his conduct. Tex. Penal Code Ann. § 6.03(b); *Ramirez-Memije*, 444 S.W.3d at 625 n.3.

However, as Boyd points out in his second issue, the abstract portion of the jury charge instead defined the term "knowingly" as though the crime were a result-of-conduct offense. The charge instructed the jury that "[a] person acts knowingly, or with knowledge, with respect to *a result* of his conduct when he is aware that his conduct is reasonably certain to cause *the result*." [Emphasis added.] Boyd contends that this charge error requires reversal.

We agree that the charge was deficient. We cannot agree, however, that the deficiency merits reversal. Boyd did not object to the charge, and thus the charge error must have caused egregious harm in order to demand a new trial. As we explain, that sort of egregious harm is absent here.

11

Unpreserved charge error warrants reversal only when the error resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19. The appropriate inquiry for egregious harm is fact- and case-specific. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).

In making an egregious-harm determination, we must consider "the actual degree of harm . . . in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel[,] and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. *See generally Gelinas*, 398 S.W.3d at 708–10 (applying *Almanza*). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at 172). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174. "Egregious harm is a high and difficult standard to meet, and such a determination must be borne out by the trial record." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (internal quotations omitted).

With regard to the first factor, the jury charge weighs against a finding of egregious harm when the charge is considered in its entirety. The error appears in the

12

abstract portion of the charge. However, the application paragraph was proper, and "[i]t is the application paragraph of the charge, not the abstract portion, that authorizes a conviction." *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). "The application paragraph is that portion of the jury charge that applies the pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations." *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012). "Because that paragraph specifies the factual circumstances under which the jury should convict or acquit, it is the 'heart and soul' of the jury charge." *Id.* at 367. "We look at the wording of the application paragraph to determine whether the jury was correctly instructed in accordance with the indictment and also what the jury likely relied upon in arriving at its verdict, which can help resolve a harm analysis." *Yzaguirre v. State*, 394 S.W.3d 526, 530 (Tex. Crim. App. 2013) (footnotes omitted).

Thus, "Texas courts have repeatedly held that where the application paragraph of the charge correctly instructs the jury on the law applicable to the case, this mitigates against a finding that any error in the abstract portion of the charge was egregious." *Roberts v. State*, No. 02-17-00108-CR, 2018 WL 1755223, at *3 (Tex. App.—Fort Worth Apr. 12, 2018, no pet.) (per curiam) (mem. op., not designated for publication) (collecting cases) (quoting *Kuhn v. State*, 393 S.W.3d 519, 529 (Tex. App.—Austin 2013, pet. ref'd)). In cases where the abstract portion of the court's charge erroneously defines the culpable mental state of "knowingly," but the application paragraph correctly instructs the jury, the error in the abstract portion usually does not result in

13

egregious harm. *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999) (op. on reh'g). In *Medina*, for instance, the defendant was charged with murder, a result-of-conduct crime, but the trial court erroneously defined "knowingly" with reference to the nature of the conduct. *Id.* at 639. The court of criminal appeals concluded that any resulting harm was not egregious because the application paragraph "instructed the jury that they must believe beyond a reasonable doubt that appellant 'intentionally or knowingly caused the death' before they could find him guilty." *Id.* at 640.

In this case, the charge's application paragraph correctly tied "knowingly" to the nature of Boyd's conduct; the application paragraph instructed the jury that they could not convict Boyd unless they found beyond a reasonable doubt that he knowingly caused the penetration of J.F.'s sexual organ with his finger. *See Valencia v. State*, No. 02-14-00406-CR, 2015 WL 7820384, at *4 (Tex. App.—Fort Worth Dec. 3, 2015, no pet.) (mem. op., not designated for publication). Thus, even if the abstract portion of the charge did not adhere to the correct definition of knowingly, the heart of the charge did, which triggers the general rule that error in the abstract portion usually does not result in egregious harm. *See Medina*, 7 S.W.3d at 640.

"The record does not provide any justification for departing from this general rule here"; with regard to the second factor, the state of the evidence militates against a finding of egregious harm. *See Roberts*, 2018 WL 1755223, at *3. True, Boyd's mental state was a contested issue, and the charge's erroneous instruction concerning mental state had bearing on that issue. However, "the mere existence of conflicting testimony

14

surrounding a contested issue does not necessarily trigger a finding of egregious harm." *Villarreal*, 453 S.W.3d at 436. Moreover, in the section above, we detailed the overwhelming evidence of Boyd's knowledge concerning the nature of his conduct—Boyd's belated "realization" that he had touched J.F., his inconsistent stories, his implausible explanations, the improbability of accidental penetration based on J.F.'s sleeping situation, the physical indicia of a nonaccidental intrusion, etc.—all of which strongly suggest that despite the charge error, "the very basis of the case" remained intact. *See Taylor*, 332 S.W.3d at 490.

As to the third factor, the argument of counsel was of mixed effect. Boyd's closing argument was consistent with the correct, conduct-oriented definition of knowingly; counsel for Boyd argued that even though Boyd admitted to touching J.F., "at no point did he say he knowingly did that. I did not intend to do that." And at certain points, the State's argument also aligned with the proper definition of knowingly, and "correct arguments may well serve to alert jurors to the presence and correctness" of instructional errors. *See Gelinas*, 398 S.W.3d at 708. To wit, the State reinforced the idea that Boyd was required to be aware of the nature of his conduct when the State argued, "So the question is the Defendant says it was an accident. Now, this was a knowing act." However, at other points in its closing argument, the State muddled the issue when it referred to the jury charge's incorrect definition of "knowingly" in result-of-conduct terms:

And as far as the definition of knowing act, you just go one paragraph above, and what is defined as knowing? What is that? What is the definition that you'll use?

A person acts knowingly or with knowledge with respect to a result of the conduct when he is aware that his conduct is reasonably certain to cause the result.

All right. His conduct was reasonably certain to cause the result.

On balance, these closing remarks slightly favor Boyd's position. Even so, this ambiguous jury argument alone is not enough to swing the case into the territory of egregious harm. *See Jourdan v. State*, 428 S.W.3d 86, 98 (Tex. Crim. App. 2014) (finding no egregious harm even though the State's argument emphasized the error).

Finally, as to the fourth catchall factor of "any other relevant information," the nature of the offense also weighs against egregious harm. *See Almanza*, 686 S.W.2d at 171. For certain offenses, the difference between nature of conduct and result of conduct is arguably "negligible." *Price*, 457 S.W.3d at 445 (Yeary, J., concurring). In *Price*, an assault–family violence case, Judge Yeary would have affirmed due to a lack of egregious harm from the failure to include a nature-of-conduct definition. *Id.* He explained, "Choking is choking; it is hard to imagine a jury that would find that Appellant intentionally, knowingly, or recklessly caused an impediment to the victim's breath or blood flow but would also fail to find that he intentionally or knowingly engaged in conduct that impeded those bodily functions." *Id.* at 446.

In a subsequent opinion, the Fourteenth Court of Appeals adopted this reasoning and extended it to aggravated sexual assault:

16

It would be hard to imagine a jury that would (1) convict appellant under the result-of-conduct definitions—finding that appellant had a conscious objective or desire to "cause the result" of penetrating the complainant's mouth with his sexual organ, or that he was "aware that his conduct [was] reasonably certain to cause" such penetration—but (2) acquit appellant under the nature-of-conduct definitions—refusing to find that appellant had a conscious objective or desire to "engage in the conduct" of penetrating the complainant's mouth with his sexual organ, or refusing to find that he was "aware of the nature of his conduct." In simpler terms, if the jury believed appellant was aware that his conduct was reasonably certain to cause the result, the jury similarly would have believed that appellant was aware of the nature of his conduct.

*Dains v. State*, No. 14-14-00816-CR, 2016 WL 675380, at *4 (Tex. App.—Houston [14th Dist.] Feb. 18, 2016, no pet.) (mem. op., not designated for publication).

We find this reasoning persuasive. For harm purposes, the defendant's awareness that his conduct was reasonably certain to cause the result (penetration of the complainant's sexual organ with his finger) is a serviceable substitute for the defendant's awareness of the nature of his conduct (penetrating the complainant's sexual organ with his finger). If there is any daylight between these two framings of the issue, it is not great. We conclude that the fourth factor, like factors one and two, strongly favors a finding of no egregious harm.

Based on the above, we cannot conclude the charge's incorrect definition of "knowingly" was a source of egregious harm. *See Wesley v. State*, 605 S.W.3d 909, 918–19 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (concluding there was no egregious harm from charge error in defining culpable mental state); *Trejo v. State*, No. 13-16-00432-CR, 2018 WL 5534107, at *10 (Tex. App.—Corpus Christi–Edinburg Oct. 25,

2018, pet. ref'd) (mem. op., not designated for publication) (op. on reh'g) (same); *Valencia*, 2015 WL 7820384, at \*6 (same); *Hutson v. State*, No. 05-09-00033-CR, 2009 WL 3210704, at \*6 (Tex. App.—Dallas Oct. 8, 2009, no pet.) (mem. op., not designated for publication) (same in aggravated sexual assault case). We overrule Boyd's remaining issue.

## IV.  CONCLUSION

The trial court's judgment is affirmed.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  May 20, 2021