

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00207-CR

———————————————

BENJAMIN BENGE, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 432nd District Court
Tarrant County, Texas
Trial Court No. 1721938D

Before Bassel, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

In a single point, Appellant Benjamin Benge challenges his conviction for indecency with a child by contact. Appellant primarily argues that the evidence is insufficient to support his conviction based upon the findings of a DNA expert because the male DNA identified on a swab of the complainant's genitals could have had a source other than Appellant. This argument ignores the other evidence that is sufficient to support the conviction, even if the DNA findings are disregarded. We therefore overrule Appellant's sole point and affirm his conviction.

## I. Factual and Procedural Background

The complainant is the biological daughter of Appellant and T.H.[1] Appellant was twenty-nine years old and T.H. was thirteen years old when they began a sexual relationship. After T.H. became pregnant with the complainant, Appellant was convicted for the aggravated sexual assault of T.H. and was sentenced to twelve years' confinement.

Appellant was released from prison for the aggravated sexual assault of T.H. in October 2017 after serving nine years of his sentence. Shortly thereafter, in December 2017, Appellant and T.H. were married. During that time, the complainant lived with her grandparents and also in foster care. But almost two years after marrying Appellant, T.H. was awarded custody of the complainant, who was about to

---

[1]To protect the complainant's anonymity, we use initials to refer to the complainant's mother. *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

be ten years old. Prior to gaining custody of the complainant, T.H. moved to an apartment on Brown Trail in Tarrant County, and the complainant visited T.H. every weekend at the apartment, which the complainant testified was occupied by T.H., Appellant, and the complainant's siblings. Though Appellant denied at trial that he had lived in the apartment, his name appears on the apartment's lease dated February 2018—more than a year and a half before the change in custody.

On November 24, 2019, Appellant and T.H. took possession of the complainant after being awarded custody, and then they all went to T.H.'s apartment. In the early morning hours of November 25, 2019, the complainant called 911, and a recording of the call was played for the jury. In that call, the complainant said that her dad had "sexually assaulted" her. The complainant was not able to tell the 911 operator her address, but she did tell the operator her first name. Hurst Police Detective Kevin Meador testified at trial that he immediately began investigating the call and was able to formulate an address for the complainant. He went to that address at 9:51 on the morning of the call, and T.H. opened the door to the apartment. Detective Meador went into the apartment and spoke with both Appellant and the complainant.

Detective Meador testified that he did not have enough evidence to arrest Appellant at that time but that he had contacted the Department of Family and Protective Services and had arranged a meeting for the complainant at the Alliance for Children and also had T.H. take the complainant to Cook Children's Medical Center

3

for a sexual-assault exam. Bren Ledbetter, a forensic nurse examiner at Cook Children's, performed the exam on the complainant. The complainant told Nurse Ledbetter that no one had touched her in a way that made her feel uncomfortable. Nurse Ledbetter testified that the complainant did not have any injuries but that she (Nurse Ledbetter) still had concerns about sexual abuse. Nurse Ledbetter explained in detail about the swabs that she had collected, including those from the complainant's genitals. The trial court admitted State's Exhibit 23, a diagram depicting the location that corresponded to each genital swab. Detective Meador sent the complainant's sexual-assault-evidence collection kit for testing.

Kristen Hammonds, a forensic biologist at the Tarrant County Medical Examiner's Office, performed testing on the complainant's sexual-assault kit in December 2019. Hammonds testified at trial that she had conducted testing on the vulvar and perianal swabs taken from the complainant to detect the presence of male DNA. The perianal swab did not contain any male DNA, so Hammonds did no further testing on that swab. On the vulvar swab, there was a high amount of female DNA and a small amount of male DNA. Hammonds then conducted further Y-STR testing on the male DNA to obtain a profile. At that time, Hammonds did not have any male sample for comparison.

In January 2020, Hammonds received a buccal swab taken from Appellant. She obtained a DNA profile from Appellant's swab and compared it to the male DNA profile taken from the complainant's vulvar swab. Hammonds testified that the

4

Y-STR profile found on the complainant's vulvar swab was the same as the Y-STR profile from Appellant. Thus, Appellant could not be excluded as the source of the male DNA present on the complainant's vulvar swab.

In 2021, the complainant made a sexual-abuse outcry. By that time, T.H.'s and Appellant's parental rights to the complainant had been terminated, and the complainant was living at Girls' Haven in Beaumont, Texas. Detective Meador arranged for a forensic interview of the complainant at the Garth House in Beaumont.

Magan Bonner conducted the forensic interview of the complainant on December 9, 2021. In that interview, the complainant described multiple acts of sexual abuse by Appellant. The complainant said that the first act of sexual abuse had occurred when she was nine years old at the "place that people go when they have ankle monitors on."[2] She said that Appellant had put her on his lap while in a car and had touched her inappropriately "where pee comes from." The complainant said that Appellant had touched her on top of her clothes and had moved his hand in a circular motion.

The complainant next told Bonner about another incident that had happened at T.H.'s apartment in Fort Worth, but the complainant did not provide any further details about that incident. Bonner also testified that the complainant had described a third act by Appellant that occurred when she was in her bed and he had come into

---

[2]The record shows that upon his release from prison, Appellant had lived in Dallas, Texas, in a house for parolees.

the room that she had shared with her sister. Bonner testified as follows about this event:

> Q. And with respect to [the third] incident, did you ask her or did she say -- did she give more details about how he touched her?
>
> A. I know she said that it was the same way that it happened in the car, but this time she was laying down.
>
> Q. So when she talked about the car, it was his hand touching her genitals, correct?
>
> A. Correct.
>
> Q. And so she said this was the same way?
>
> A. Yes.
>
> Q. In fact, in talking -- in all of the acts that she talked about, did she indicate that it happened in the same way?
>
> A. Correct.
>
> Q. And did you take that to mean his hand touching her genitals?
>
> A. That is correct.

The complainant then told Bonner about "the last time that it [had] happened" and said that "it was the time that she had called the police." The complainant gave Bonner the following description of this event:

> Q. Okay. What else did she say?
>
> A. So she talked about him being on the edge of her bed . . . . She described it to be the same way that he did in the car, but this time she was laying down. And she made the 911 call from her room, and she . . . said he [had taken] the phone and [had] hung it up, and then she said he was, like, acting good after that.

. . . .

> Q. And you said that she said in this instance it happened the same way, meaning his hand on her genitals; is that right?
>
> A. Yes.

Bonner stated that the complainant told her that Appellant "did this to her" five times.

The complainant testified at trial and explained that the three private areas on a female are the "breasts, crotch area, and butt." She referred to the two male private areas as the "butt and no-no square." She further explained that the "no-no square" is where "pee" comes out. The complainant testified that the first event that she remembered was when Appellant had taken her from the backseat of the car and had moved her into the front seat on his lap. She said that Appellant had moved her clothes over and had touched her private area—where "pee" comes out—with his private area—where "pee" comes out.

With respect to the events of abuse that occurred, the complainant testified as follows:

> Q. Okay. Before we talk about what else happened that day, were there other times that you can remember when Ben's private parts or another part of his body touched you?
>
> A. No.
>
> Q. Okay. Do you remember how many times total he sexually abused you?

A. It happened whenever I first met him, and then, like, a couple of weeks after, and then whenever I went to go live with them.

The complainant testified to a later occasion when Appellant had touched her butt with his "no-no square" after he had gotten into bed with her at T.H.'s apartment. After Appellant went outside, the complainant said that she had called the police; the only call to the police mentioned in the record was the 911 call of November 25, 2019. The complainant recalled that the police had come to the apartment later that morning but that she did not tell them what had happened because she was worried that T.H. would not believe her. The complainant remembered going to the hospital and the nurse's swabbing her private area, but she said she did not feel comfortable telling the nurse what had happened.

Appellant testified at trial that he and T.H. had returned to the apartment around midnight on the night that they took possession of the complainant; he testified that the date they took custody was November 24, 2019. They all went to bed soon after, but later Appellant heard the complainant on her phone. According to Appellant, he and T.H. went into the complainant's bedroom and took her phone, and then they went back to bed. Appellant did not know that the complainant had later called 911, but the police arrived the morning of November 25, 2019. Appellant acknowledged having sex with T.H. when she was underage, but he did not admit to any inappropriate behavior with the complainant.

8

Appellant was indicted in two counts for the offense of indecency with a child by contact. Both counts alleged that Appellant had engaged in sexual contact by touching "any part of the genitals of [the complainant], a child younger than 17 years of age." Count One charged that Appellant had committed the offense on or about November 25, 2019, soon after T.H. had obtained custody of the complainant.[3]

The jury returned a guilty verdict on Count One and assessed punishment at confinement for life. The trial court sentenced Appellant accordingly, and this appeal followed.

## II. Discussion

Appellant argues in his sole point that the evidence is insufficient to support his conviction for indecency with a child by contact as alleged in Count One of the indictment. The record proves otherwise.

### A. Standard of Review

In our evidentiary-sufficiency review, we view all evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex.

---

[3]Count Two alleged that Appellant had committed the offense of indecency with a child by contact on or about December 6, 2019, in Tarrant County, and the court's charge specified that the offense had allegedly occurred in Tarrant County. Appellant's counsel argued that because the evidence showed that the offense charged in Count Two had occurred in Dallas County rather than Tarrant County, the jury should not convict Appellant on that count. In turn, the jury acquitted Appellant on Count Two.

Crim. App. 2017). The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 593, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence.").

We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *See Braughton*, 569 S.W.3d at 608. In assessing the legal sufficiency of the evidence to support a criminal conviction, we must defer to the jury's credibility and weight determinations because the jury is the sole judge of a witness's credibility and the weight to be given her testimony. *See Martin*, 635 S.W.3d at 679.

### B. Applicable Law

A person commits the offense of indecency with a child by contact as alleged in Count One if he

> (1) engages in sexual contact with the child or causes the child to engage in sexual contact;

10

. . . .

(c) In this section, "sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:

(1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child[.]

Tex. Penal Code Ann. § 21.11(a)(1), (c)(1).

A child sexual abuse victim's uncorroborated testimony is sufficient to support a conviction for indecency with a child. *See* Tex. Code Crim. Proc. Ann. art. 38.07; *Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Further, "[a] child victim's outcry statement alone can be sufficient to sustain a conviction for a sexual offense." *Jimenez v. State*, 507 S.W.3d 438, 442 (Tex. App.—Fort Worth 2016, no pet.); *see also Saldaña v. State*, 287 S.W.3d 43, 60 (Tex. App.—Corpus Christi–Edinburg 2008, pet. ref'd); *Kimberlin v. State*, 877 S.W.2d 828, 831 (Tex. App.—Fort Worth 1994, pet. ref'd) (op. on reh'g).

C. Analysis

In his brief, Appellant quotes the entire direct- and cross-examination testimony of forensic biologist Hammonds and argues that her testimony shows only that the Y-STR profile found on the complainant could have come from a male in the same male lineage as his. He contends that because the complainant had contact with different males in her paternal family, the evidence is insufficient to support his conviction.

At trial, Appellant's theory was that the complainant's infant brother, who was Appellant's biological son, was the source of the DNA found on the complainant's vulvar swab. Appellant's counsel argued during closing arguments that there was reasonable doubt because the DNA could have come from Appellant's son.

Although Appellant presented a defensive theory that one of his male relatives could have been the source of that DNA, there was other evidence to support his conviction, specifically testimony from the complainant and her statements to the forensic interviewer. As we explain below, we reject Appellant's only specific attack on the sufficiency of the evidence, which centers on the complainant's description of how Appellant had touched her and ignores her statements to the forensic interviewer. Other than this specific attack, Appellant's argument makes only a passing reference to inconsistencies in the complainant's testimony.

The specific argument that Appellant makes challenging the sufficiency of the complainant's testimony is that she "further testified that her father's 'no-no square' (Genitals) touched her butt. She did not testify as to Count One, that his penis touched her vagina." Apparently, this is a reference to the complainant's testimony about the event that prompted the 911 call. Thus, the argument appears to be that there is no evidence that Appellant ever touched the complainant's genitals as he was alleged to have done in the indictment and which was the act submitted in the court's charge.

We acknowledge that there are disparities between what the complainant told the forensic examiner and what the complainant testified to at trial. But inconsistencies do not render a child's testimony inadmissible; instead, inconsistencies go to the weight that the testimony should be given. *See, e.g.*, *Minnis v. State*, No. 02-20-00027-CR, 2021 WL 62127, at *3 (Tex. App.—Fort Worth Jan. 7, 2021, no pet.) (mem. op., not designated for publication).

There is evidence that Appellant touched the complainant's genitals. The jury heard evidence that the complainant had told forensic interviewer Bonner of multiple occasions in T.H.'s Fort Worth apartment when Appellant had touched her genitals with his hand, the last time being the event that prompted the complainant's 911 call.[4] These multiple events occurred during a time when the complainant was in T.H.'s apartment in Fort Worth on weekend visits before the change of her custody. Though Appellant denied that he had occupied the apartment during this period, he was listed on its lease for more than a year before the complainant moved permanently to Fort Worth to live with T.H.—making his denial of being in the apartment suspect. The complainant also told Bonner that the event that had prompted the 911 call involved Appellant's touching her genitals with his hand.

---

[4]A forensic examiner may be an outcry witness under Texas Code of Criminal Procedure Article 38.072. Tex. Code Crim. Proc. Ann. art. 38.072. *See Rodgers v. State*, 442 S.W.3d 547, 552 (Tex. App.—Dallas 2014, pet. ref'd) (providing that the trial court did not abuse its discretion in designating a forensic examiner as an outcry witness); *Eldred v. State*, 431 S.W.3d 177, 185 (Tex. App.—Texarkana 2014, pet. ref'd) (same); *Robinett v. State*, 383 S.W.3d 758, 762 (Tex. App.—Amarillo 2012, no pet.) (same).

Despite any inconsistencies, the testimony provided sufficient evidence that Appellant committed the offense of indecency with a child by contact because there is evidence that he touched the complainant's genitals. *See* Tex. Penal Code Ann. § 21.11(a)(1), (c). Again, it is not simply the complainant's statements to Bonner that establish that Appellant had touched her genitals on or about November 25, 2019. There was no question that she had made her 911 call on November 25, 2019, claiming that Appellant had touched her genitals. Thus, there is proof beyond the outcry statements of the abuse.

There is proof that Appellant had touched the genitals of the complainant on multiple occasions in Tarrant County antecedent to and on the date alleged in the indictment. We hold that the evidence is sufficient to support Appellant's conviction for indecency with a child by contact. We overrule Appellant's sole point.

### III. Conclusion

Having overruled Appellant's sole point, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 27, 2024

14